George W. Pratt (USB #2642)
Jessica P. Wilde (USB #11801)
JONES WALDO HOLBROOK & McDONOUGH PC
Attorneys for Plaintiff Utah First Federal Credit Union
170 South Main Street, Suite 1500
Salt Lake City, Utah  84101
Telephone:  (801) 521-3200
Facsimile:  (801) 328-0537

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH FIRST FEDERAL CREDIT UNION,<br><br>Plaintiff,<br>vs.<br><br>FEDERAL INSURANCE COMPANY,<br><br>Defendant. | **FIRST AMENDED COMPLAINT**<br><br>Civil No. 2:10-cv-00522-DB<br><br>Honorable Dee Benson |

Plaintiff Utah First Federal Credit Union, for its First Amended Complaint against defendant Federal Insurance Company, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff Utah First Federal Credit Union ("Utah First") is a non-profit organization chartered under the Federal Credit Union Act of 1934, with its principal place of business in the state of Utah.

2.  Defendant Federal Insurance Company ("Federal") is a corporation organized under the laws of the state of Indiana, with its principal place of business in the state of Indiana.

933806v3

3. The citizenship of Utah First and Federal are different, for purposes of 28 U.S.C. § 1332(a).

4. The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

5. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a).

6. Venue in this Court is proper under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

7. In late August 2009, Utah First management became aware of irregularities in several checking accounts controlled by one of its members, Mr. Harold Egan ("Egan").

8. The irregularities were found among the 18 Utah First accounts that were owned either by Egan or a business entity owned and controlled by Egan, for which Egan was an authorized signator (hereafter the "Egan Accounts").

9. When these irregularities were discovered Egan was advised, on August 27, 2009, that he could no longer make withdrawals from any of the Egan Accounts.

10. After the Egan Accounts were frozen, and activity in the accounts stopped, Utah First ascertained that the Egan Accounts collectively had a negative balance of $1,736,084.32 (hereafter the "Loss").

11. Utah First immediately initiated an investigation into the activities resulting in the Loss, and discovered that the Loss had resulted from Egan's perpetration of a check kiting scheme involving the Egan Accounts.

12. Utah First's investigation also revealed that Egan's implementation of the check kiting scheme was enabled by inducing three Utah First tellers – Brittany Allen, Richard Moore, and Alethea

Kaitoku (hereafter the "3 Tellers") – to violate Utah First's policy for handling checks deposited by Egan into one of the Egan Accounts, drawn on another of the Egan Accounts at Utah First. Utah First refers to such checks as "On-us" checks, because they are drawn "on us" (*i.e.,* on a Utah First account).

13. Utah First's policy for the treatment of "On-us Checks," found at page 2320-2 of its Policy Manual, provides as follows:

> (7) **ON-US CHECKS**. When a check drawn on the Credit Union is presented for cash or payment, the funds must be immediately withdrawn from the account. Members or non-members can present on-us checks. Review the following before paying the check:
>
> a) Are the funds available?
>
> \* \* \*

14. In sum, Utah First's On-us policy (hereafter the "On-us Policy") requires the teller to first check to determine whether there are sufficient funds available in the account drawn upon to cover the check presented, and to then immediately withdraw funds from that account (if such funds are available) for deposit into the payee account.

15. Through its internal investigation Utah First learned that the 3 Tellers identified above, although they were well aware of the Utah First On-us Policy, consistently failed, over an extended period of time, to follow the On-us Policy with checks deposited by Egan.

16. What the 3 Tellers did instead, at Egan's request, was to send checks through the federal reserve system, as Utah First does with checks presented to it that are not On-us checks.

17. It is the period of delay, from the time that a check is deposited through the time that the check clears, and a financial institution's willingness to allow its customer to draw against checks that have not yet cleared, that enables a wrongdoer to perpetrate a check kiting scheme.

18. And it is just this risk – the possibility of loss through check kiting – that Utah First's On-us Policy is designed to avoid.

19. If the On-us Policy had been followed by the 3 Tellers handling checks drawn on the Egan Accounts, it would have been impossible for Egan to perpetrate his check kiting scheme. In fact, it would have been impossible for Egan to perpetrate his check kiting scheme if the 3 Tellers had just followed the portion of the On-us Policy requiring them to first check to determine whether there were sufficient funds available in the account drawn upon to cover the check presented, and refused to process checks when there were not sufficient funds available; however, the 3 Tellers did not even follow this portion of the On-us Policy.

20. It is the policy of Utah First that every employee shall be alert to, and report to management, any facts, circumstances, or problems indicating the potential for harm to Utah First. This policy is expressed, explicitly and implicitly, in official Utah First documents, and in regular formal and informal training given to Utah First employees.

21. Although the 3 Tellers had ample reason, based on their dealings with Egan, and knew, or should have know, that Egan was check kiting or otherwise engaged in activities with the potential to cause harm to Utah First, none of them ever alerted their supervisors to any of the facts of which they were aware concerning the Egan Accounts, or that they suspected check kiting or any potential for harm to Utah First.

22. Section 1645 of Utah First's Operations Manual: Policy and Procedural Guidelines, which contain Utah First's Board-approved policies, addresses Fraud, and includes the following language:

> **General Policy Statement:**
>
> The Credit Union does not tolerate fraud by its officials or employees. Fraud is grounds for termination or suspension.
>
> **Guidelines:**
>
> (1) **UNACCEPTABLE ACTS.** Fraud or dishonesty by a Credit Union director, committee member, officer, or employee is totally unacceptable. Acts considered fraudulent include:
>
>> (a) any criminal act involving Credit Union property or records, including theft, forgery, and embezzlement.
>>
>> (b) kiting checks or share drafts.
>
> * * *
> (3) **INVESTIGATION.**
>
> * * *
>> (b) **Investigation By Supervisory Committee.** Suspected fraud should be reported immediately to the Supervisory Committee, who should immediately investigate. . . .

23. Section 6070 of the Utah First Human Resource Policy Manual addresses Employee Conduct and Work Rules and provides, in pertinent part:

> 2.
>
> * * *
>
> c)  <u>Honesty and Integrity</u>.  Employees are expected to demonstrate honesty and candor in the conduct of all business activities, including observance of the spirit as well as the letter of the law. . . .  Employees are responsible for reporting any illegal or unethical actions of employees and non-employees to Management. The following are examples of behaviors subject to corrective action:
>
>> (1) Wilful or negligent damage, theft, or misuse of property;
>>
>> * * *
>>
>> (7) Unauthorized transactions such as check kiting, forgeries, unauthorized loans or unapproved funds disbursements . . . .

24. The policies referenced in paragraphs 22 and 23 above are referred to hereafter as the "Check Kiting Policies."

25. The Check Kiting Policies require all employees to be alert to, and to report any known or suspected cases of check kiting.

26. The 3 Tellers were specifically aware of the Check Kiting Policies, as evidenced among other things by their execution, on an annual basis, of the Utah First Employee Receipt and Acknowledgment Agreement, in which the 3 Tellers acknowledged their responsibility to enforce Utah First's Check Kiting Policies.

27. Although the 3 Tellers had ample reason, based on their dealings with Egan, and knew, or should have know, that Egan was check kiting or otherwise engaged in activities with the potential to cause harm to Utah First, none of them ever alerted their supervisors to any of the facts of which they were aware concerning the Egan Accounts, or that they suspected check kiting or any potential for harm to Utah First.

28. After Utah First had completed its initial investigation of the circumstances resulting in the Loss, the 3 Tellers (Allen, Moore, and Kaitoku), were terminated as employees of Utah First.

29. On or about November 1, 2007, Federal had issued to Utah First a Credit Union Bond, with Bond No. 82147605 DFI (hereafter the "Bond"), insuring Utah First against numerous risks, as described in the Bond.

30. The Bond was issued to cover the period from November 1, 2007 through November 1, 2010.

31. Utah First has no other insurance coverage that is applicable to the Loss.

32. One of the risks covered by the Bond is for losses resulting from an employee's failure to faithfully perform his or her duties. Specifically, under Insuring Clause 1(C), the Bond insures Utah First against

> [l]oss resulting directly from any Employee's failure to faithfully perform his or her duties by consciously disregarding the ASSURED'S established and enforced share draft, deposit, or lending policies.

(hereafter the "Faithful Performance Clause").

33. Federal's limit of liability for loss resulting from the breach of the Faithful Performance Clause is $4,500,000.

34. By letter dated September 16, 2009, Utah First provided written notice of the Loss, pursuant to Section 14(A) of the Bond.

35. Thereafter, by letter dated December 9, 2009, Utah First submitted to Federal a written proof of loss (hereafter the "Proof of Loss"), pursuant to Section 14(B) of the Bond.

36. In the Proof of Loss Utah First asserted its position that the Loss is in the amount of $1,736,084.32, and that it is covered under the Faithful Performance Clause of the Bond because, among other things, it results from the conscious disregard, by the 3 Tellers, of Utah First's On-us Policy.

37. By letter dated October 18, 2010 Utah First amended its Proof of Loss, to assert its position that the Loss is also covered under the Faithful Performance Clause of the Bond because it results from the conscious disregard, by the 3 Tellers, of Utah First's Check Kiting Policies.

38. Commencing in early February 2010, Federal commenced an investigation into Utah First's claim, as authorized pursuant to Section 19 of the Bond.

39. Utah First has fully cooperated in Federal's investigation, by making several of its employees (and one former employee) available for interviews that were conducted by Federal's

counsel; by assisting in efforts to arrange interviews with other individuals that Federal sought to interview; by responding to all of Federal's requests for documents (which were voluminous) that it wished to review in connection with its investigation; and by otherwise doing all things Federal asked it to do in connection with the investigation.

40. On April 20, 2010, during a telephone conference call requested by Federal, that was attended by Federal, Utah First, and both of their legal counsel, Federal advised Utah First that (while no final decision had yet been made), it was presently Federal's view that to the extent Utah First actually had an On-us Policy, it was not properly enforced, as required by the Faithful Performance Clause of the Bond.

41. The Bond authorizes Utah First to file suit to recover any loss under the Bond 60 days after filing its proof of loss. Specifically, Section 14(D) of the Bond provides:

> Legal proceedings for the recovery of any loss under this Bond shall not be brought prior to the expiration of sixty (60) days after the proof of loss is filed with the COMPANY or after the expiration of twenty-four (24) months from the discovery of such loss.

42. When the original Complaint was filed it had been nearly six months since Utah First filed the Proof of Loss.

## CLAIM FOR DECLARATORY JUDGMENT

43. Utah First repeats and incorporates by reference the preceding allegations of this Complaint.

44. An actual, real, and substantial controversy exists between Utah First and Federal regarding their respective rights and duties under the Bond, as contemplated under 28 U.S.C. § 2201.

45. Utah First has fully complied with all its obligations under the Bond, including providing timely notice of its Loss, and timely submission of its Proof of Loss in the amount of $1,736,084.32.

46.   Utah First has also fully cooperated in Federal's investigation.

47.   For the reasons expressed above, in its Proof of Loss, and in discussions with Federal and its counsel, and contrary to the position taken by Federal during the April 20, 2010 telephone conference call, Utah First's Loss is covered under the Faithful Performance Clause set forth in Section 1(C) of the Bond.

48.   A judicial determination and declaration is necessary and appropriate at this time, to ascertain the rights and duties of Utah First and Federal under the Bond.

49.   Utah First is accordingly entitled to relief as set forth in the prayer for relief below.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Utah First Federal Credit Union prays for relief against defendant Federal Insurance Company as follows:

A.   For declaratory judgment that Utah First's Loss is in the amount of $1,736,084.32, and that the Loss is covered under the Faithful Performance Clause of Section 1(C) of the Bond;

B.   For declaratory judgment that such coverage is not subject to any exclusion in the Bond;

C.   For an award of Utah First's costs and attorneys' fees incurred in connection with this action; and

D.   For such other and further relief as the Court deems just and proper.

DATED this 11th day of November, 2010.

          JONES WALDO HOLBROOK & McDONOUGH PC

          By: /s/ George W. Pratt
             George W. Pratt
             Jessica P. Wilde
             Attorneys for Plaintiff Utah First Federal Credit Union

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of November, 2010, I caused a true and correct copy of the foregoing FIRST AMENDED COMPLAINT to be served, by first class mail, postage prepaid, on the following:

>John A. Adams
>Caleb J. Frischknecht
>RAY QUINNEY & NEBEKER P.C.
>36 South State Street, Suite 1400
>P.O. Box 45385
>Salt Lake City, UT  84145-0385
>
>David T. DiBiase
>David J. Billings
>ANDERSON, McPHARLIN & CONNERS LLP
>444 South Flower Street
>Los Angeles, CA  90071-2901

       /s/ George W. Pratt
    George W. Pratt